May it please the court, my name is Roger Kubain and I represent the petitioner, Mrs. Susanna Bagdasaryan. I would like to reserve two minutes for rebuttal. Okay, keep track. Thank you, Your Honor, I will. Plaintiff is seeking, excuse me, petitioner is seeking asylum as she meets the definition of a refugee. She fled persecution from her home country of Armenia based on her religious beliefs as a member of a non-traditional religious minority there, namely the Kurds. The government in this case conceded at the immigration hearing, immigration individual hearing, both credibility and past persecution and in fact the immigration judge in this case also made an independent finding of past persecution and credibility. The BIA subsequently affirmed the IJ's denial in the case and so therefore I believe the court is reviewing the IJ's decision. The first issue here from the petitioner's perspective is whether or not the IJ's finding was based on substantial evidence insofar as she found that the government had met their burden by a preponderance of the evidence that country conditions in our media had fundamentally improved for those potentially exposed to religious persecution. The second issue from our perspective is whether or not the IJ then misapplied the law after making that finding when she found the petitioner had not met her burden of showing compelling reasons for being unwilling or unable to return to Armenia or whether or not she had a reasonable possibility that she would suffer other serious harm upon her removal there. Do you see any evidence in the record, I suppose that's what this turns on, do you see evidence that country conditions indeed had improved in any significant way? Your Honor, I believe... Since she was persecuted to the time that the hearing was held. Your Honor, I believe that at best the country reports that were made available by the government to the immigration judge were mixed and therefore failed to rise to the level of a preponderance of the evidence showing a fundamental change or a fundamental improvement in country conditions. If I may point out a few things from the country reports or at least direct the court's attention to them. The court, excuse me, the immigration judge relied upon the 2004 International Religious Freedom Report and also the 2000, I'm sorry Your Honor, and also the 2002 Department of State Report on Human Rights Practices. And if one looks at even the citations mentioned by the immigration judge in her decision, the court will find that when taken in context, again at best the report shows a mixed review, a mixed climate that have to do with negative societal attitudes, an apostolic church that heavily influences the secular government, and also more importantly at least isolated incidents of state actors either acquiescing to religious persecution or engaging in it themselves. And none of them directly address Pentecostal. Thank you, Your Honor, for pointing that out. That's something that did arise before the immigration judge as well, and the way that I would characterize that to the court is that in the minds of the Armenian government, in the minds of the Armenian government, it doesn't matter, Your Honor, that non-traditional religious groups such as Pentecostals, such as Jehovah's Witnesses, such as other, what they would deem cultist or cult-like groups are all placed into the same category, and so therefore anything in the record that mentions, for example, Jehovah's Witnesses I think would also be at least somewhat applicable to the way in which all minority religions, or non-traditional minority religions, those that practice things like speech and... That's the question I was wondering about, because I should think that Pentecostals are not Jehovah's Witnesses and are not the same, and if things somewhat improve for Jehovah's Witnesses, I believe you're telling me I should draw an inference that therefore they improve for Pentecostals. Is that correct? Your Honor, I would point out that from the record, I don't believe that the government met its burden of showing by a preponderance of the evidence that things improved to such a degree that we could say that there was a fundamental change in country conditions. For Jehovah's Witnesses? For Jehovah's Witnesses, yes, Your Honor. And ergo for Pentecostals? Yes, Your Honor. Okay, but so whatever, if we decided that things got better for Jehovah's Witnesses, your case is finished, is that right? Your Honor, I would say to some extent... In your view? Well, to some extent, Your Honor, of course I am arguing that they are bunched up in the same group. However, I would also point out to the Court that there is a difference in the history of the way in which Pentecostals have not only come about in Armenia, but the way that they've been treated in the past. And I see that in the reports from 2000 and 2001, even back as far back as 95 and 96, we find egregious acts of violence against specifically Pentecostals. And I don't see that in any of the reports specifically about Jehovah's Witnesses to that extent or to that widespread of an extent. So why do you want us to assume that if things were nice for Jehovah's Witnesses, they were nice for Pentecostals? That's what I'm trying to find. One doesn't have to dig much deeper one way or the other. I'm not sure that I understand the Court's question, Your Honor. I'm sorry. Well, you just said that it looked to you as if maybe Jehovah's Witnesses might not have been treated as badly as Pentecostals were. In the past, Your Honor, yes. I'm sorry. At the same time, you're telling me I should treat Pentecostals like Jehovah's Witnesses in terms of country treatment. You seem to be asking me to assume antithetical things, and maybe you can clarify. Yes. Thank you, Your Honor. I appreciate that. What I'm trying to say, Your Honor, is that I think the root point here, and I think what the issue is specifically, is whether or not the government met its burden by a preponderance of the evidence. And I believe that they did not because the reports that were provided to the judge, specifically the International Religious Freedom Report and the Department of State Report on Human Rights Practices, are mixed in their review for Jehovah's Witnesses, Pentecostals, or any nontraditional religious group. And so therefore, I don't believe there was substantial evidence in the record before the judge to make this finding. And I would further point out to the Court that... ...from the reports, reflecting conditions in the country at the time of the mistreatment of your client. So you're asking me from between, okay, from between 2000 and 2002 and into the time 2003 to 2004, essentially. I mean, the question is changed conditions, so I'm asking you, what's the change in the reports? Well, Your Honor, I think the issue here is the change. I think that's addressed in the motion to reopen between whether or not there were changed country conditions from the time of the hearing to the time when we filed the motion to reopen. And I think that's a separate issue as well. No, Judge Fletcher's talking about... Yes, Your Honor. ...conditions at the time she was persecuted, 2001, I believe. Yes, Your Honor. ...compared to conditions at the time the I.J. ruled. Because the I.J. says, changed country conditions now overcome the presumption that arises out of your persecution. So I'm asking about what difference is there between the reports at the time of her persecution and the reports at the time the I.J. decides the case. Your Honor, I think when one looks at the reports, I don't think that there is much of an overall change. I think that, again, they're both mixed reviews. In both instances. Why don't we hear from the government? You saved 41 seconds. Thank you, Your Honor. May it please the Court? My name is Edward Wiggers and I represent the respondent in this matter. The record does not compel the conclusion that the immigration judge erred in finding the conditions in Armenia rebutted the presumed fear of persecution. Let me ask you the same question that I asked at the end. What changes are there in the country conditions report between the time she was persecuted and the time the I.J. decides the case? The biggest change, Your Honor, compared with Petitioner's testimony of what she experienced. For the moment, I'm asking about the reports. Yes, Your Honor. The biggest change is that the reports at the time the immigration judge decided the case stated that, generally speaking in Armenia, relationships between different religious groups were amicable while there was some ambivalence towards certain religious minority groups, which is a far cry from the prior conditions that pervaded in Armenia. In 2001? Do we have the 2001 report here? I don't believe we do, Your Honor, in the record. How does one find that there was significant change if one doesn't know what the conditions were? We know what the conditions were for her in 2001, correct? Yes, Your Honor. We know that she was being persecuted. Now, what you need to show us is what these reports show us that things had significantly changed by 2002, for example. Because if we go from 2002 forward, they keep saying, well, things are the same, things are the same. It doesn't get us anywhere. In addition to the amicable relationships among religious groups, there was... No, no, no. Let me ask you the question. Do we have a country report for the time that she was persecuted? I don't recall one in the record, Your Honor. And if you're going to argue changed country conditions, isn't it incumbent upon you to put that in the record so we can assess the change? We can assess the change, Your Honor, from the description of conditions that Petitioner provided that led to the finding of past persecution. You know, I think that's apples and oranges for me. I mean, she can describe what happened to her, and the IJ says that's persecution. And you're saying that the country conditions in general have changed without giving me any indication that the underlying conditions, based on the reports that you rely on for the change, you don't give me the early reports. And it's your burden to prove by preponderance of the evidence. Yes, Your Honor. The report for 2004 noted that there was now an ombudsman to address rights concerns for minority religious groups in Armenia, which there was no, we have no indication, and based on the description of conditions that Petitioner provided, there was no reason to assume that their ombudsman was in place before. The clear indication from the 2004 reports is that Armenia's government was taking a more proactive interest in protecting the rights of religious groups. The laws that used to exist relating to, and this is a point from the 2004 report, before there were laws that restricted the funding, the availability of foreign funding, and proselytizing activities. By the time of the 2004 report, however, the government was no longer enforcing those laws. So we have evidence that the government was backing off on the conditions that were affecting religious minorities. Furthermore, and a departure from... The groups other than the Armenian church are subject to government restrictions. We do know that, right? Yes, Your Honor. And it does say that societal attitudes remain ambivalent. Yes, Your Honor. Remain ambivalent, so I guess they were ambivalent before and they're still ambivalent, correct? Yes, Your Honor. Where's the part that says things are now wonderful? I'm sorry, Your Honor. Where's the part that says things are now much better than they were before? They're the discussions in the report. The main point from the report that things are better is basically in the same paragraph where it talks about ambivalence towards some minority groups. Generally, however, it notes the religious groups have an amicable relationship. We also have the situation... That language about the link between ethnicity and religion is strong. Yes, Your Honor. But that language that you keep quoting, and I see it through, is present in all of these reports, so I'm having the same problem my colleagues are having. Where's the change? The change is the institution of the ombudsman to try to protect the rights of minority religious groups. There's also a change in that the Armenian highest court started protecting victims of discrimination. There was a police official in a financial capacity who was fired for being a Jehovah's Witness, but the Armenian Supreme Court, I'm not sure if that is their actual name, but the highest court in Armenia, ordered her reinstated to her position. So what we have overall for changes is the Armenian government taking steps to protect religious minorities, even Jehovah's Witnesses, which are the more targeted group of any in Armenia, primarily for their proselytizing, but also for their resistance to military service, neither of which are conditions that pertain to Pentecostals. Was that the decision that some other government group then issued a statement saying, we regret that decision? There was an organization, I believe there may have been some people in Armenia, Your Honor, who were not happy with it, but... I thought it was a government group, not just a bunch of citizens on the street who didn't like the ruling by their highest court. There was an organization that was not happy with it, Your Honor. I'm not sure if it was a government organization or not, but... So we're back to ambivalent. Primarily towards Jehovah's Witnesses, Your Honor, who are refusing to participate in the military in a country with mandatory conscription that recently concluded an armed conflict. So it's apples and oranges to petitioner situation. We have the widespread abuse of religious minorities that the government is attempting to curtail, which is substantial evidence supporting the immigration judge's position. It certainly does not compel the conclusion that the immigration judge erred, which is the standard under the substantial evidence test for reviewing the agency's findings of facts. And as far as the motion to reopen, we have the reports again are basically situations continuing as before. I would note that the Department of Religious Affairs in the 2006 country report, the Armenian government has, the Department of Religious Affairs has begun to work with the ombudsman. The further protect the religious minority groups. So to the extent there's a showing of any change on the motion to reopen, conditions have improved for the religious minorities, at least from the perception of the efforts of the Armenian government to protect them. Additionally, the record does not compel the conclusion that petitioner merits humanitarian asylum because she did not show that her persecution rose to the atrocious level of persecution as discussed in the board's decision in matter of Chin and the board properly denied the motion to reopen is untimely unless the court has further questions. That concludes our presentation. Okay. Thank you. You've saved a 41 seconds, but we'll expand it to a minute. That may help. We don't know. Um, your honors, I think that we, I could stand here and government council could stand here and pick and choose things from the 2004 report and the national religious freedom report. Um, but the point I think that the court would ultimately draw is that, um, at best, uh, parts of things are getting better. Parts of things are getting worse. Maybe parts of things are staying the same. So I think what that adds up to ultimately is that the government can't meet its burden, didn't meet its burden in this case. And also, as the court pointed out, we have no reference point to things other than, um, the respondent, excuse me, the petitioner's testimony, which indicate that things were very bad for Pentecostals at the time that she was in Armenia. And her testimony has been deemed credible. And in fact, the government has conceded credibility and that what the things that happened to her amounted to past persecution in terms of the motion to reopen and, and, and government councils reference to, you know, your, your minute has just expired. Thank you. And we'll, I appreciate your time. Thank you. Thank you both. Thank you. Bagdasarian versus Holder is now submitted for decision. We thank counsel for their arguments.
judges: Fernandez, Fletcher W. , Tallman